Joseph J. Tuso*
Ann E. Pille*
Victoria Serigano
REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
Tel: (212) 521-5400
Fax: (212) 521-5450
jtuso@reedsmith.com
vserigano@reedsmith.com

*Counsel for Plaintiff Harlem 133 Owner, LLC*
 *pro hac vice motion forthcoming*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>LEVI BALKANY,<br><br>             Debtor. | Chapter 7<br>Case No. 22-41041-NHL |
| HARLEM 133 OWNER, LLC,<br><br>             Plaintiff,<br><br>v.<br><br>LEVI BALKANY,<br><br>             Defendant. | **COMPLAINT TO DENY DISCHARGE OF DEBT PURSUANT TO 11 U.S.C. §§ 523(a) AND 727(a)**<br><br><br>Adv. Proceeding _____ |

Harlem 133 Owner, LLC ("Plaintiff"), by and through its undersigned counsel, hereby

makes this Complaint for a judgment denying discharge of one or more of the claims asserted

against the debtor, Levi Balkany ("Debtor" or "Defendant" or "Balkany"). Specifically, Plaintiff

seeks entry of a judgment declaring its claims against Defendant non-dischargeable pursuant to 11

U.S.C. § 523(a)(2). Additionally, Plaintiff objects to the general discharge of Defendant's debts

pursuant to 11 U.S.C. §§ 727(a)(2). In the alternative, Plaintiff seeks an order from this Court,

pursuant to 11 U.S.C § 727(c)(2), directing the Trustee to examine the acts and conduct of the Debtor to determine whether a ground exists for denial of discharge.

<u>**PRELIMINARY STATEMENT**</u>

This Court should recognize Defendant's petition for Chapter 7 for what it is: the latest iteration in a long line of delay tactics, obfuscations, and evasions to avoid, *inter alia*, a more than $20 million judgment entered against Defendant, and in favor of Plaintiff, of which he has not paid a single penny. As described below, Plaintiff's claims emanate from Defendant's years-long fraudulent campaign aimed at obtaining funds from lenders like Plaintiff and absconding with those funds, and secreting and depleting assets through a carefully-crafted shell game and admitted transfers to friends and family for no consideration.

Contrary to what Defendant may argue, the circumstances that led to this Adversary Proceeding are not merely a prolonged stroke of bad luck, nor are they a story of an honest debtor that fell upon hard times. Rather, they are the confluence of dozens of Defendant's affirmative choices rife with chicanery, blatant misrepresentations, and outright fraud. Having ignored countless court orders and obligations – including at least one court order that threatened Defendant with jail for absconding with money that was restrained – Defendant cannot escape the simple fact that his unlawful conduct has finally caught up with him.

In 2019, Defendant came to Plaintiff seeking $26 million in financing purportedly for a "99% complete" condominium that he needed a "bridge to sale" of the units. Notably, less than three (3) months after inducing Plaintiff to make a loan to Borrower in the amount of $26 million (the "<u>Loan</u>"), Defendant appears to have admitted that the condominium sales was a ruse. Specifically, Defendant stated in a shocking but candid email that:

**From:** Levi Balkany <Levi@happylivingdev.com>
**Sent:** Tuesday, July 16, 2019 8:46 AM
**To:** michael@treviancap.com; Don Moses <dmoses@arenaco.com>
**Subject:** Fwd: 308 West 133rd Street - Next Steps

Please let me know what you wanna do and what would you propose to allow me to rent it, this building is never going to be sold as a condo regarding who is in control, unless someone magically would reduce the taxes

But before Plaintiff learned that the Loan was a scam from the start, and as part of his efforts to induce Plaintiff to lend him $26 million, Defendant made a series of representations regarding the financial viability of his various enterprises and also represented that he had a personal net worth of over $18 million, including over $15 million in real property and over $2 million in cash.  To further induce Plaintiff to lend money to Defendant's entity, W133 Owner LLC (the "Borrower"), Defendant personally guaranteed all of Borrower's debts to Plaintiff, covenanted that the subject property would be used only as residential condominiums for sale to individual home buyers, and further covenanted that he would not enter into any lease, permit any encumbrance, or change the use of the subject property absent Plaintiff's prior written consent. Likewise, Defendant covenanted that he would keep the property adequately insured at all times.

To further induce Plaintiff into making the Loan, the Borrower, through Defendant, represented that the Borrower and the property securing the $26 million Loan would comply in all material respects with all applicable Legal Requirements, and that the allegedly 99% complete project would not violate any Legal Requirements.  "Legal Requirements" were defined as mean "all federal, State, county, municipal and other governmental statutes, laws, rules, orders, regulations, ordinances … affecting the Property or any part thereof, or the zoning, construction, use, alteration, occupancy or operation thereof … and all permits, licenses and authorizations and regulations relating thereto."   Borrower, through Defendant, also represented to Plaintiff that all financial data that the Borrower and Guarantor [Defendant Levi Balkany] had provided to Plaintiff

were "true, complete and correct in all material respects, [and] (b) accurately represent the financial condition of Borrower, Guarantor and the Property…."  Similarly, the Borrower, through Defendant, represented that "No statement of fact made by Borrower or on behalf of Borrower in this Agreement or in any of the other Loan Documents contains any untrue statement of a material fact or omits to state any material fact necessary to make statements contained herein or therein not misleading" and  "There is no fact presently known to Borrower which has not been disclosed to Lender which materially and adversely affects, or might materially and adversely affect, the Property or the business, operations or condition (financial or otherwise) of Borrower [ ] or Guarantor."

Less than six (6) weeks after Plaintiff made the Loan (as defined below) to Borrower, the Borrower – controlled wholly by Defendant – defaulted. Thereafter, Plaintiff worked with Borrower and Defendant on a series of forbearance agreements and loan modifications pursuant to which Borrower and Defendant were afforded an opportunity to cure the defaults under the Loan.  They did not.  Furthermore, additional subsequent events revealed that the "defaults" were not merely another stroke of bad luck, but rather part of a scheme orchestrated by Borrower and Defendant to dupe Plaintiff into making further extensions under the Loan.

Defendant's knowing and intentional misconduct did not stop there, however.  After Defendant induced Plaintiff to make the Loan, Plaintiff learned that Defendant was illegally renting units in the subject property to homeless services occupants, and had failed to adequately insure the property, all in violation of the Loan Agreement (as defined below).  Even worse, these "leases" that the homeless services occupants were being forced to execute had all the hallmarks of a Medicaid fraud by requiring occupants to be seen 8 times a month by "in-house social

services" and "medical staff" that Defendant was going to set up in the common area of this high-end condominium building.  One example of a "lease" provision states:

> **Social & Medical Services**
> You agree that, each month, you will meet with our in-house social services staff 6 times per month and our medical staff 1-2 times per month. Your sessions with the social services staff will be comprised of either 2 private sessions or group sessions and 1 specialty session. All sessions will be based on and around your personal and family needs. Any missed sessions must be made up before the years end, but if more than 4 sessions are missed and not made up within a six-month time frame this can have a direct impact on and potentially jeopardize your lease renewal. During your move-in process you will be given an orientation that will also consist of you scheduling your initial social services and medical assessment appointment. This appointment must be set before your key and new tenant package is released.

Not surprisingly, and as correctly determined by Justice Andrea Masley of the New York Supreme Court, these "leases" were found to be illegal, not permitted by the Loan, and the product of "**Balkany's fraud**."  *See* Decision + Order dated March 21, 2023 ("The court acknowledges defendants' [homeless occupants] challenging personal circumstances and the significant hardship on defendants caused by Balkany's fraud.").

When Plaintiff learned of Defendant's illegal leasing scheme and lack of insurance on the very same property Defendant was placing homeless occupants in, Plaintiff was forced to bring suit against Borrower and Defendant in state court seeking a declaratory judgment, injunctive relief and the appointment of a receiver.  The state court issued a temporary restraining order ("TRO") prohibiting further illegal conduct on the part of Defendant –which was later converted into a preliminary injunction – and set a date for the appointment of a receiver.  During the pendency of the TRO, Defendant knowingly and intentionally violated the TRO and continued to place homeless occupants in the condominium.

Following the granting of the injunction and receivership motion, and the day before the receiver was to be appointed, Defendant caused the Borrower to file a voluntary petition on July 16, 2020 for relief under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Eastern District of New York ("Court").  The following day, Defendant

instructed his cohorts to immediately continue their illegal and fraudulent leasing scheme, stating that the bankruptcy filing essentially gave him license to commit further frauds:

**From:** Levi Balkany <Levi@happylivingdev.com>
**Sent:** Friday, July 17, 2020 9:23 AM
**To:** mf@stewardholdingsgroup.com; Bruce Weiner <bweiner@nybankruptcy.net>
**Subject:** RE: Re: 308 West 133rd Street

Michael,
I am sure, I filed bankruptcy and that eliminates receiver and restraining on leasing we can get everyone in next week, lets go for it.

Even worse, Defendant had his then (and current) counsel participate in the scheme by telling Defendant's co-conspirators that they could "proceed to lease apartments", i.e., the high-end condominium units:

============ Forwarded message ============
From: Bruce Weiner <bweiner@nybankruptcy.net>
To: "Levi Balkany"<Levi@happylivingdev.com>,
"mf@stewardholdingsgroup.com"<mf@stewardholdingsgroup.com>
Date: Fri, 17 Jul 2020 09:28:35 -0400
Subject: RE: Re: 308 West 133rd Street
============ Forwarded message ============

W133 Owner may operate in the ordinary course of business and can proceed to lease apartments.

**Bruce Weiner**
Rosenberg, Musso & Weiner, LLP
26 Court Street, Suite 2211
Brooklyn, New York 11242
(718) 855-6840 phone
(718) 625-1966 fax
www.nybankruptcy.net
http://nybankruptcy.net/main/blog/

Thereafter, by motion dated July 24, 2020, Plaintiff sought, *inter alia*, entry of an Order appointing a Chapter 11 Trustee and, by Order dated September 9, 2020, the Court granted the motion appointing a Chapter 11 Trustee and, by Order dated September 14, 2020, approved the appointment of Lori Lapin Jones, Esq. as Chapter 11 Trustee of the Debtor.

Following the Chapter 11 petition filed by Defendant's Borrower entity, on or about December 1, 2020, Plaintiff commenced an action against Defendant on his personal guaranty,

which Defendant gave to induce Plaintiff into making the Loan to Borrower, which he owned and controlled.  Judgment was thereafter entered against Defendant on August 23, 2021, for a total of $40,681,002.52 (the "Judgment").  Defendant did not pay one penny of what he owed.  On October 6, 2021, Plaintiff served Defendant with a restraining notice (the "Restraining Notice").

After the Judgment was entered, Defendant failed to answer any of Plaintiff's discovery, necessitating judicial intervention.  On January 18, 2022, Plaintiff filed an Order to Show Cause requesting that the Court compel Balkany to respond to an information subpoena and a subpoena duces tecum dated September 17, 2021 (the "Subpoena Duces Tecum").  Evidencing his total disregard for the legal process, Balkany failed to even answer the Order to Show Cause.  On February 14, 2022, the Supreme Court ordered Balkany to respond to Plaintiff's subpoenas by February 22, 2022 and produce all documents responsive thereto.  In contempt of that Court Order, Balkany did <u>not</u> respond to the Subpoena Duces Tecum and did <u>not</u> produce any documents.

Plaintiff's Order to Show Cause, filed on January 18, 2022, also sought to compel the compliance of another of Defendant's wholly owned and controlled entities, Happy Living Development LLC, that had refused to respond to a subpoena duces tecum dated September 17, 2021.  Plaintiff has also served numerous subpoenas on entities owned, controlled by, or associated with Balkany or that otherwise possessed relevant information, including financial institutions.  After several months, only Balkany-connected parties responded to the subpoenas, leading to the inescapable conclusion that Defendant directed or encouraged (and secured) widespread non-compliance with judgment-discovery – consistent with Defendant's pattern of obstruction.  For example, in June 2020, while Plaintiff was learning of the illegal housing scam Defendant was attempting to pull off with the illegal "leases", Defendant instructed those around him to "ignore" Plaintiff:

From: Levi Balkany
Sent: Friday, June 19, 2020 7:52 AM
To: Steven Colon <colon@cvbllp.com>; mf <mf@stewardholdingsgroup.com>; Rick Newman
<rnewman@mntnlaw.com>
Cc: J Turini <j.turini@yahoo.com>; ysaacks@stewardmanagementgroup.com
Subject: west 133rd street

…

I understand your being harassed by my lenders. Please ignore them. I will work it out with them in the next 3
months, I cant get another lender in until my 421A is approved. All of Michael and Jeniffers promises to help
with HPD since May didn't amount to squat, fortunately I spoke to senior person in HPD yesterday for the first
time through a connection and hopefully things will start moving , but its going to realistically take another 2-3
months for the full approval. If you decide to engage them please copy me on all conversations.

In addition to Defendant obstructing Plaintiff's subpoenas and motions to compel,
Defendant knowingly violated the Restraining Notice by effectuating a series of transactions (the
"Transactions"), to himself and his other projects.  His serial violations were evidenced by bank
statements of Balkany-related entities produced by: (1) Capital One Bank (the "Capital One
Statements"); and (2) Defendant's sister-in-law and now-front person, Rachel Medalie, after
Plaintiff filed a motion to compel her compliance with a subpoena she had also ignored (the
"Medalie Bank Statements"). The Capital One Statements include records of accounts belonging
to Defendant-controlled entities (West 37th St LLC, 805 Washington Ave LLC, and 9th St Dev
LLC), along with corresponding signature cards demonstrating that Defendant is an authorized
signer for each entity's bank account, and is listed as the "Managing Member" of each entity.

The Capital One Statements also reflect transactions by and between these entities and two
other entities Balkany controls, including Happy Living Development LLC and Bespoke Harlem
West LLC, in addition to HL Cleaning Services LLC and HL Interiors LLC, entities which
Defendant admitted, under oath, that his wife, Perel Balkany, owned ("[T]here is a company called
HLD [sic] Interiors and HLD [sic] Cleaning . . . one's a framing company and one's a cleaning
company." Q: "Who owns those companies? Who are the members?" A: "My wife owns it."). *See
Harlem 133 Lender, LLC v. Levi Balkany*, Index No. 656666/2020, NYSCEF Doc. No. 130 at 9-

10 (N.Y. Sup. Ct. N.Y. Cty. Com. Div.) (Masley, J.).   The Medalie Bank Statements include records of accounts belonging to Bespoke Harlem West LLC at Capital One Bank and Bank of America, from which Defendant personally withdrew $49,366.02.   Defendant admits these transactions and does not dispute his involvement with these various shell-game entities.

Significantly, in addition to other items still remaining to be discovered, the Capital One Bank Statements and the Medalie Bank Statements revealed that Defendant and his entities moved and/or spent ***nearly $500,000 in violation of the Restraining Notice***.   Thereafter, the Supreme Court ruled that Defendant was in contempt, and that he had until April 25, 2022 to purge his contempt by (1) producing all materials responsive to Plaintiff's Subpoena Duces Tecum; and (2) re-paying to Plaintiff the money Defendant transferred in violation of the Restraining Notice. A written order followed on April 13, 2022 directing, among other items:

> ORDERED that defendant Balkany is held in civil contempt and is directed to pay plaintiff $484,067.93, the amount wrongfully transferred out of the business entities defendant controls by April 25, 2022; and it is further

> ORDERED that consistent with the restraining notice defendant Balkany shall not transfer any funds from his personal accounts nor the accounts for any business entities that he controls; and it is further

> ORDERED that consistent with this court's February 14, 2022 Order on default, by April 25, 2022 defendant Balkany shall comply with this court's February 14, 2022 Order; and it is further

> ORDERED that in the event that the contempt has not been purged by April 25, 2022, a per diem fine shall be assessed against Balkany in the amount of $1000.00 per day, from April 26, 2022 forward until such time as Balkany has purged the contempt and complied with the February 14, 2022 Order, as well as this Order; and it is further

> ORDERED that in the event that the contempt has not been purged by May 13, 2022, plaintiff may renew its application for this court to issue a warrant for the arrest of Balkany and may seek entry of a judgment for the amount of per diem fines accrued as of that date; and it is further

One business day before Defendant was required to purge his contempt, Defendant filed an "expedited interim appeal," which was denied on May 12, 2022.  Faced with the near certainty of going to jail for his contempt, Defendant filed a chapter 7 petition on May 13, 2022.

For the foregoing reasons, and as more fully described below, Plaintiff seeks a judgment declaring its claim against Defendant non-dischargeable pursuant to Section 523 of the Bankruptcy Code and object to the general discharge of Defendant's debt pursuant to Section 727 of the Bankruptcy Code.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this Complaint and Adversary Proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(1).

2.      This Adversary Proceeding constitutes a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I).

3.      This Adversary Proceeding has been brought in accordance with Rules 4007 and 7001(4) and (6) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

4.      Venue for this Adversary Proceeding is proper in this judicial district pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The statutory predicates for this Adversary Proceeding are Bankruptcy Code sections 523(a) and 727(a), and Bankruptcy Rules 4004, 4007, and 7001.

## THE PARTIES

6.      Defendant is an adult citizen of the State of New York who currently resides at 884 Eastern Parkway, Brooklyn, New York 11213.

7.      Plaintiff is a limited liability company organized and existing under the laws of the State of Delaware with a place of business located at 405 Lexington Avenue, 59th Floor, New York, New York 10174.  Plaintiff was formerly known as Harlem 133 Lender, LLC.

## FACTUAL BASIS FOR OBJECTION TO DISCHARGE

**A.      Defendant Induces Plaintiff to Make the Loan and Guaranties its Payment**

8.      In early 2019, Plaintiff learned, by way of Arena Investors LP ("Arena"), that Defendant sought to secure bridge loan financing ostensibly to fund the completion of a forty-six (46) unit residential condominium property located at 308 W. 133rd Street, New York, New York (the "Property").

9.      Specifically, Defendant represented that he needed a loan to pay off Borrower's then-existing construction loan, fund accounts payable, complete the final allegedly one to two percent of remaining construction work, obtain a temporary certificate of occupancy ("TCO"), and provide Borrower with time to market and sell the units.

10.      At all relevant times, Defendant was Borrower's sole member and was in control over Borrower.  Upon information and belief, Defendant was the only individual with authority to take actions on behalf of, or bind, Borrower.

11.      To induce Plaintiff to make the Loan, Defendant made a series of representations relating to his personal financial condition and the financial condition of the entities he controlled.

12.      Among other things, in early 2019, Defendant represented to Plaintiff's agents that there was approximately $10 million of cash equity invested in the development project ("Project") for the Property, $2.5 million of which had been purportedly supplied by Defendant in his personal capacity.

13.      Defendant likewise represented that he had a net worth of over $18 million, consisting of $2.1 million in cash, over $1 million in investments, and over $15 million of real estate.

14.      Defendant advised Plaintiff that he had extensive experience overseeing real estate projects throughout New York City.

15.    Defendant, through Borrower, represented that: (i) the Property was permitted to be used exclusively as residential condominium property; (ii) the Property was 98% complete as of March 18, 2019; (iii) the Property was in compliance with all laws applicable to its use as a residential condominium; and (iv) that Borrower would not amend or modify in any material manner the approved plans and specifications for the Project without Plaintiff's prior written consent.

16.    Additionally, Defendant provided Plaintiff with the condominium declaration ("Condominium Declaration") dated January 16, 2019, filed by Borrower, and submitted to the New York Attorney General's office, which stated that each of the 46 units at the Property would be sold to one or more owners, with each owner obtaining fee ownership in, and exclusive right of occupancy and possession of, their respective units.

17.    Plaintiff, through Arena, performed extensive due diligence on Borrower and Defendant, including on entities Defendant controls or is affiliated with, and the Property itself.

18.    This diligence was a necessary part of Plaintiff's underwriting process and financial due diligence.

19.    Indeed, to induce Plaintiff to provide financing to Borrower, Defendant irrevocably and unconditionally promised the full and prompt payment of all amounts due by executing a guaranty of payment and performance (the "Guaranty").

20.    Relying on the foregoing representations and Defendant's obligations under the Guaranty, on March 18, 2019, Plaintiff made the Loan to Borrower in the amount of $26 million. Contemporaneous with the execution of the Loan Agreement, Borrower executed a Consolidated, Amended and Restated Promissory Note, dated March 18, 2019 in favor of Plaintiff in the original principal amount of $26 million (the "Note").

21.     The Loan was expressly conditioned on Defendant honoring the Guaranty, and Plaintiff relied on Defendant's contractual commitment to honor the Guaranty.

22.     The Loan was also conditioned on Borrower's representation that Property was to be used exclusively as a residential condominium, and that the Project was in compliance with all applicable laws.

23.     The Loan and Guaranty were made on Borrower's express representations that:

- "Borrower possesse[d] all rights, licenses, permits and authorizations, governmental or otherwise, necessary to entitle it to own its properties and transact the business in which it [was then] engaged."

- "Neither the Improvements as constructed, nor, to Borrower's knowledge, the use of the Property…violate[d] (a) any Legal Requirement (including subdivision, zoning, building, environmental protection and wetland protection Legal Requirements), or (b) any building permits, restrictions or records, or agreements affecting the Property or any part thereof."

- "All financial data…that ha[d] been delivered to Lender in respect of Borrower, Guarantor and the Property (a) are true, complete and correct in all material respects, (b) accurately reflect the financial condition of Borrower, Guarantor and the Property, as applicable, as of the date of such reports, and (c) ha[d] been prepared in accordance with GAAP throughout the periods covered, except as disclosed therein."

- "Borrower ha[d] obtained (or is covered by) and ha[d] delivered to Lender certified copies of all Policies, with all premiums paid thereunder, reflecting the insurance coverages, amounts and other requirements set forth in [the Loan Agreement]."

- "The Property, including, without limitation, all buildings, improvements, parking facilities, sidewalks, storm drainage systems, roofs, plumbing systems, HVAC systems, fire protection systems, electrical systems, equipment, elevators, exterior sidings and doors, landscaping, irrigation systems and all structural components, are in good condition, order and repair in all material respects."

24.     The Loan and Guaranty were also conditioned on Borrower's and Defendant's representations that they were solvent, and that their assets were consistent with the representations and disclosures made by them to Plaintiff.

25.     Plaintiff would not have made the Loan to Borrower absent the representations Defendant made concerning his net worth, his and Borrower's solvency, and the financial condition of Defendant's businesses.

26.     Borrower, through Defendant, covenanted that it would not enter into any lease, permit any encumbrance, or change the use of the Property without prior written consent from Plaintiff.

27.     Borrower, through Defendant, also covenanted that it would keep the Property insured at all times.

28.     On March 18, 2019, Plaintiff and Borrower entered into the Consolidated, Amended and Restated Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing granting, *inter alia*, a first lien upon the property to Plaintiff (the "<u>Mortgage</u>"; collectively with the Loan Agreement, Note, and all other related documents and/or executed contemporaneously therewith, the "<u>Loan Documents</u>").

29.     The March 18, 2019 Loan had an Initial Maturity Date of March 18, 2020.  *See* Ex. A at p. 10.  This date was not extended.

30.     Borrower was also required to remit monthly payments of interest at the Note Rate ("<u>Monthly Debt Service Payment</u>") from the closing date through the Maturity Date.  *See* Ex. A at § 2.2.1(a).

**B.     <u>The Borrower Defaults Under the Loan and Guaranty</u>**

31.     Less than six weeks after the Loan was made, Borrower defaulted for the first time by failing to deliver evidence that the condominium declaration had been recorded by the Office

of the City Register of New York, and failing to deliver to Plaintiff a TCO for improvements on the Property permitting residential occupancy.

32.     To afford Borrower the opportunity to cure its defaults, the Loan Agreement was modified on June 17, 2019 to permit Borrower more time to deliver the TCO and complete the first condominium unit sale pursuant to the terms and conditions of the Loan Documents.

33.     Notwithstanding the foregoing modification, Borrower defaulted on the Loan again just twenty-three (23) days later.

34.     The very next month, Borrower defaulted a third time by failing to make the required monthly payment and failing to close on the sale of the first condominium unit.

35.     In light of these defaults, Plaintiff, Borrower, Defendant, and 308 West 133rd Street, LLC executed a Forbearance Agreement ("Forbearance Agreement") on August 30, 2019.

36.     Under the Forbearance Agreement, both the Borrower and Defendant unequivocally admitted to and acknowledged each of their defaults.

37.     Plaintiff relied on Defendant's representations that Borrower would cure its defaults.

38.     Borrower and Defendant failed to comply with the terms of the Forbearance Agreement, thereby defaulting again.

39.     Neither Borrower nor Defendant paid the outstanding balance of the Loan.

40.     Defendant did not cause the Property to be delivered to Plaintiff.

41.     Upon information and belief, Borrower – acting at the sole direction of Defendant – never intended to comply with the terms of the Loan Agreement.

42.     Defendant was aware that Borrower could not honor or comply with the Loan Agreement at the time it was executed, and that the representations set forth therein were materially

false when made.

43.     Upon information and belief, Defendant never intended to comply with the terms of the Guaranty and/or believed that he could not honor or comply with the Guaranty at the time it was executed.

**C.     Defendant Illegally Enters into Leases for the Property without Plaintiff's Permission, Plaintiff Obtains a Restraining Order and Preliminary Injunction against Borrower, and a Receiver is Appointed to Oversee the Property**

44.     Notwithstanding Borrowers representations, assurances, and promises, Plaintiff discovered that Borrower had been leasing, and holding itself out as leasing, units at the Property, in violation of the Loan Documents.

45.     Indeed, Defendant's own words, less than three (3) months after the Loan was made, evidence that he never intended to sell the units but, instead, wanted to lease the Property.

46.     Balkany did, in fact, begin leasing condominium units to homeless residents with a subsidy from the Department of Homeless Services, and sought to obtain and withhold rents that Defendant could misappropriate for his own benefit.

47.     Additionally, Plaintiff discovered that the Property was uninsured, also in violation of the Loan Documents.

48.     On June 5, 2020, Plaintiff commenced an action in the Supreme Court of the State of New York, New York County, Commercial Division by filing a Summons and Verified Complaint against Borrower and Defendant.  *See Harlem 133 Lender, LLC v. W133 Owner, LLC, Index No. 652300/2020, NYSCEF Doc. No. 1* (N.Y. Sup. Ct. N.Y. Cty. Com. Div.) (Masley, J.). Plaintiff sought, *inter alia*, (i) a declaratory judgment against Borrower and Defendant declaring that Borrower had materially breached the Loan Agreement and Condominium Declaration, and judgment be entered in Plaintiff's favor; (ii) an injunction enjoining Defendant and Borrower from

leasing the Property; and (iii) an emergency appointment of a receiver to prevent further harm to the Property.

49.     In conjunction with the foregoing complaint, on June 16, 2020, Plaintiff obtained a TRO enjoining Defendant and Borrower, or anyone acting or purporting to act on their behalf, from transferring leasing, using, misusing, or otherwise encumbering the Property. *See Harlem 133 Lender, LLC v. W133 Owner, LLC*, Index No. 652300/2020, NYSCEF Doc. No. 35 (N.Y. Sup. Ct. N.Y. Cty. Com. Div.) (Masley, J.).

50.     After Plaintiff provided copies of the TRO to third-parties, Defendant breached the TRO and instructed those third-parties to "ignore" Plaintiff instead.

51.     On July 13, 2020, Justice Masley entered an order extending the TRO, granting a preliminary injunction and granting Plaintiff's motion for an appointment of a receiver. *See Harlem 133 Lender, LLC v. W133 Owner, LLC*, Index No. 652300/2020, NYSCEF Doc. No. 80 (N.Y. Sup. Ct. N.Y. Cty. Com. Div.) (Masley, J.).

52.     In the order, Justice Masley concluded that Defendant had admitted to illegally leasing units in the Property and ruled that the Court would select a receiver for the Property by July 17, 2020.

**D.     Defendant Causes Borrower to File for Chapter 11 Relief and Admits That He is Using Bankruptcy as a Means to Thwart Creditors**

53.     On July 16, 2020, Defendant caused Borrower to file for Chapter 11 relief – just one day before the state court was going to appoint a receiver to oversee the Property.

54.     Defendant admitted that he used this bankruptcy filing and the automatic stay as a shield for his unlawful conduct, instructing his cohorts in a July 17, 2020 email that "I filed bankruptcy and that eliminates [the] receiver and restraining on leasing we can get everyone in next week lets go for it" and even enlisting his lawyer to misrepresent to third parties that Borrower

could "proceed to lease apartments." *See Harlem 133 Lender, LLC v. Levi Balkany*, Index No. 656666/2020, NYSCEF Doc. No. 32 (N.Y. Sup. Ct. N.Y. Cty. Com. Div.) (Masley, J.).

55.     Upon information and belief, Defendant initiated the Borrower's bankruptcy proceeding in an effort to frustrate Plaintiff's ability to seize and possess the Property.

56.     Meanwhile, Defendant retained possession, benefit, and use of the Property.

**E.    Plaintiff Obtains a Judgment against Defendant**

57.     On December 1, 2020, Arena commenced an action against Defendant in his individual capacity as Guarantor in the Supreme Court of the State of New York, New York County, Commercial Division by filing a Summons and Verified Complaint, as well as motion for Summary Judgment in Lieu of Complaint pursuant to CPLR 3213. *See Harlem 133 Lender, LLC v. Levi Balkany*, Index No. 656666/2020 (N.Y. Sup. Ct. N.Y. Cty. Com. Div.) (Masley, J.). Plaintiff sought, *inter alia*, a judgment against Defendant in an amount no less than $35,755,541.05 plus interest, representing the amount due and owing under the Loan Documents and Guaranty as of November 30, 2020.

58.     After briefing and oral argument, the Supreme Court entered the Judgment against Defendant on August 23, 2021 for a total of $40,681,002.52.

59.     Defendant has not paid a cent in satisfaction of the Judgment.

**F.    Defendant's Interconnected Entities**

60.     Plaintiff discovered that Defendant has direct and indirect interests in a slew of entities associated with various real estate projects.  These include, but are not limited to: 293 Adelphi MZL LLC; 300 West 122nd Street; 411 W 37 Capital LLC; West 37th St., LLC; 450 Grand Avenue Owner, LLC; 488 4th Avenue; 525 Saint Marks Avenue; 805 Washington Ave LLC; 834 Pacific Holdings; 9th Street Dev, LLC; HLD Cleaning Services LLC; HLD Interior LLC; Bespoke

Harlem West, LLC; Happy Living 9th Street, LLC; and Happy Living Development, LLC ("HLD").

61.    Defendant exerts total control over all of the foregoing entities.

62.    While HLD is Defendant's general contractor company, Defendant is also HLD's managing member.

63.    Defendant has admitted that HLD is central to Defendant's extensive web of affiliated corporate entities, and serves as the vehicle through which Defendant manages them.

64.    Additionally, Plaintiff confirmed that Defendant is the managing member and controls the bank accounts belonging to West 37th St LLC, 805 Washington Ave LLC, and 9th Street Dev LLC.

65.    Each of the foregoing entities are affiliated with Defendant's real estate development projects in New York City.

**G.    Defendant's Close Relative's Role in Defendant's Ventures**

66.    Defendant's close relatives nominally serve as managers and/or employees of various entities in which Defendant has a direct or indirect interest.

67.    These known individuals include Defendant's sister-in-law, Rachel Medalie ("Medalie").

68.    Medalie is Defendant's self-described business partner.

**H.    Defendant's Unlawful Campaign of Post-Judgment Discovery Evasion**

69.    On September 20, 2021, Plaintiff served HLD with a subpoena duces tecum and restraining notice ("HLD Restraining Notice").

70.    Also on September 20, 2021, Plaintiff served 9th St Dev LLC with a restraining notice ("9th Street Dev LLC Restraining Notice").

71.    9th St Dev LLC is an entity affiliated with one of Defendant's development projects located at 229 9th Street, Brooklyn, New York 11215

72.    On October 6, 2021, Plaintiff served Defendant with a restraining notice (the "Balkany Restraining Notice") pursuant to CPLR 5222 and an information subpoena ("Information Subpoena") before serving a subpoena duces tecum ("Subpoena Duces Tecum") on October 21, 2021.

73.    On November 2, 2021 Plaintiff served 805 Washington Ave LLC with a restraining notice ("805 Washington Ave LLC Restraining Notice" and, together with the HLD Restraining Notice, Balkany Restraining Notice, and 9th Street Dev LLC Restraining Notice, the "Restraining Notices").

74.    805 Washington Ave LLC, which Defendant manages, is an entity affiliated with one of Defendant's development projects located at 805 Washington Avenue, Brooklyn, New York 11238.

75.    The Restraining Notices barred Defendant and his entities from transferring or interfering with any property in which they have an interest so long as Defendant owes a debt to Plaintiff.

76.    On November 16, 2021, Plaintiff deposed Defendant.  During that deposition, Defendant agreed to produce HLD's loan documents and financial statements containing information on its debts and wire transactions.

77.    Plaintiff also served dozens of subpoenas on entities it believes to be directly or indirectly controlled by or associated with Defendant, or that otherwise possess relevant information; nine subpoenas on financial institutions; and eight subpoenas on individuals,

including Defendant's close relatives, Plaintiff believes to be closely affiliated with Defendant's businesses.

78.     In addition to Defendant completely ignoring his discovery obligations, Plaintiff faced similar obstruction from Defendants' family members and entities he personally, directly, or indirectly controls or controlled, and entities with which he and/or his businesses are associated.

79.     Eventually, Defendant provided Plaintiff with a perfunctory, incomplete, and facially implausible response to the Subpoena Duces Tecum and Information Subpoena claiming, *inter alia*, that Defendant did not own any personal property.

80.     Upon information and belief, Defendant orchestrated widespread non-compliance with judgment-discovery in order to buy time to secrete assets and artificially insulate himself from judgment enforcement.

81.     On January 18, 2022, Plaintiff filed an Order to Show Cause requesting that the Supreme Court compel Defendant and HLD to respond to their respective information subpoenas and subpoenas duces tecum.

82.     Defendant and HLD failed to even answer the Order to Show Cause.

83.     On February 14, 2022, the Supreme Court granted Plaintiff's motion to compel discovery from Defendant and HLD ("Discovery Order").

84.     Defendant and HLD failed to abide by the Discovery Order and did not produce any documents or provide any response whatsoever to the court-ordered discovery.

85.     Faced with this obstruction, Plaintiff was forced to file a motion to compel discovery from 10 entities and 2 individuals on February 16, 2022, and the Supreme Court granted Plaintiff's motion on March 10, 2022.

86.     Plaintiff has diligently sought to locate Defendant's assets, which has taken Plaintiff months to assemble proof of Defendant's movement of funds.

I.     **Third-Party Discovery Reveals Manifest Violations of the Restraining Notices**

87.     Through third-party discovery, Plaintiff learned that Defendant and his entities transferred nearly half a million dollars in violation of the Restraining Notices (the "Transfers") in less than three months.

88.     Upon information and belief, the Transfers were made for no consideration whatsoever.

89.     Upon information and belief, the Transfers were not valid membership distributions and were not made for legitimate business purposes.

90.     The charts below show the known Transfers made by and between Defendant and entities he controls, which are established through incontrovertible third-party business records:

|  | Date | From | Amount | Type of Transfer |
|---|---|---|---|---|
| Transfers to Levi Balkany | 10/22/2021 | West 37th Street LLC | $      281.00 | ACH withdrawal |
|  | 11/17/2021 | West 37th Street LLC | $      265.00 | ACH withdrawal |
|  | 12/22/2021 | Bespoke Harlem West LLC | $  48,802.82 | ACH withdrawal |
|  | 12/24/2021 | Bespoke Harlem West LLC | $        17.20 | ACH withdrawal |
| Transfers to Happy Living Development, LLC | 10/25/2021 | West 37th Street LLC | $    7,000.00 | ACH withdrawal |
|  | 10/28/2021 | West 37th Street LLC | $    1,500.00 | Wire transfer withdrawal |
|  | 10/28/2021 | 805 Washington Ave LLC | $    1,589.22 | Wire transfer withdrawal |
|  | 11/23/2021 | 9th Street Dev LLC | $  65,000.00 | Wire transfer withdrawal |
|  | 10/7/2021 | Bespoke Harlem West LLC | $  21,442.46 | Transfer withdrawal |
|  | 10/22/2021 | Bespoke Harlem West LLC | $  17,296.55 | Wire transfer withdrawal |

| | | | | |
|---|---|---|---|---|
| | 10/26/2021 | Bespoke Harlem West LLC | $ 1,355.00 | Wire transfer withdrawal |
| | 10/29/2021 | Bespoke Harlem West LLC | $ 1,795.30 | Wire transfer withdrawal |
| | 11/4/2021 | Bespoke Harlem West LLC | $ 15,000.00 | Wire transfer withdrawal |
| | 11/4/2021 | Bespoke Harlem West LLC | $ 18,108.46 | Wire transfer withdrawal |
| | 11/5/2021 | Bespoke Harlem West LLC | $ 3,750.00 | Wire transfer withdrawal |
| | 11/5/2021 | Bespoke Harlem West LLC | $ 10,000.00 | Wire transfer withdrawal |
| | 11/15/2021 | Bespoke Harlem West LLC | $ 8,250.00 | Wire transfer withdrawal |
| | 11/23/2021 | Bespoke Harlem West LLC | $ 9,313.45 | Wire transfer withdrawal |
| | 12/6/2021 | Bespoke Harlem West LLC | $ 4,140.74 | Wire transfer deposit |
| | 12/17/2021 | Bespoke Harlem West LLC | $ 12,500.00 | Wire transfer deposit |
| | 12/20/2021 | Bespoke Harlem West LLC | $ 35,000.00 | Wire transfer deposit |
| | 12/27/2021 | Bespoke Harlem West LLC | $ 4,140.00 | Wire transfer deposit |
| Transfers to Bespoke Harlem West LLC | 10/21/2021 | 805 Washington Ave LLC | $ 3,500.00 | Wire transfer withdrawal |
| | 11/1/2021 | 805 Washington Ave LLC | $ 3,465.00 | Transfer deposit |
| | 11/1/2021 | 805 Washington Ave LLC | $ 1,795.00 | Transfer deposit |
| | 11/1/2021 | 805 Washington Ave LLC | $ 1,200.00 | Transfer deposit |
| | 11/9/2021 | Happy Living Development LLC | $ 12,500.00 | Wire transfer deposit |
| Transfers to West 37th Street LLC | 11/2/2021 | HL Interiors LLC | $ 9,750.00 | ACH deposit |
| | 11/2/2021 | HL Interiors LLC | $ 8,100.00 | ACH deposit |
| | 11/2/2021 | HL Interiors LLC | $ 5,144.00 | ACH deposit |
| | 10/12/2021 | Bespoke Harlem West LLC | $ 400.00 | Transfer withdrawal |
| | 10/12/2021 | Bespoke Harlem West LLC | $ 300.00 | Transfer withdrawal |
| | 10/18/2021 | Bespoke Harlem West LLC | $ 1,300.00 | Transfer withdrawal |
| | 11/9/2021 | Bespoke Harlem West LLC | $ 43,474.73 | ACH withdrawal |

|  | 11/9/2021 | Bespoke Harlem West LLC | $ 780.00 | ACH withdrawal |
|---|---|---|---|---|
|  | 11/22/2021 | Bespoke Harlem West LLC | $ 963.00 | Transfer withdrawal |
| Transfers to 805 Washington Ave LLC | 11/10/2021 | Bespoke Harlem West LLC | $ 1,965.00 | Wire transfer withdrawal |
|  | 10/20/2021 | 9th Street Dev LLC | $ 20,000.00 | Transfer withdrawal |
|  | 11/10/2021 | 9th Street Dev LLC | $ 15,000.00 | Transfer withdrawal |
| Transfers to 9th Street Dev LLC | 10/8/2021 | 805 Washington Ave LLC | $ 30,000.00 | Transfer withdrawal |
|  | 10/8/2021 | Bespoke Harlem West LLC | $ 7,159.00 | Transfer withdrawal |
|  | 10/15/2021 | Bespoke Harlem West LLC | $ 725.00 | Transfer withdrawal |
| Transfer to HL Cleaning Services | 11/10/2021 | 9th Street Dev LLC | $ 30,000.00 | Wire transfer withdrawal |

91.     In sum, a net total of $484,067.93 was transferred in violation of the Restraining Notices, including nearly $50,000 directly to Defendant's personal bank account.

92.     The Transfers demonstrate that Defendant shuttled assets among various entities in a concerted campaign to defraud, evade, and frustrate Plaintiff's judgment collection efforts, and in violation of the Restraining Notices.

93.     In addition, Medalie could not – because she cannot – explain why her affiliated entities made such Transfers.

94.     As such, the Transfers constitute fraudulent transfers within the meaning of New York law and the United State Bankruptcy Code.

95.     Given the limited third-party discovery Plaintiff has received thus far, Plaintiff has reason to believe that Defendant's fraudulent transfer scheme extends beyond the Transfers.

96.     Neither Defendant nor his entities have paid Plaintiff a cent since being served with their respective Restraining Notices.

**J.**     **Defendant is Found in Contempt for Violating the Balkany Restraining Notice**

97.     After discovering the Transfers, Plaintiff filed a motion on February 25, 2022 to hold Defendant in contempt for violating the Balkany Restraining Notice and for failing to provide court-ordered discovery.

98.     Nearly a month later Defendant filed an opposition, consisting of a 21-paragraph affidavit and 15-paragraph attorney affirmation, but failed to submit a supporting memorandum of law or any case citations to the Supreme Court.

99.     Notably, Defendant did not dispute that he was served with the Balkany Restraining Notice, that the Transfers took place, or that the Transfers occurred after Defendant and his entities were served with the Restraining Notices.

100.     The Supreme Court held oral argument on the Contempt Motion on April 11, 2022. At the hearing, Justice Masley ruled that:

a.   Defendant had conceded all issues of law, including any argument as to whether Defendant benefited from the transactions or controlled the entities at issue;

b.   Because Defendant failed to produce any materials in response to Plaintiff's Subpoena Duces Tecum as required by the Court's prior order, Defendant was subject to an adverse inference that he did, in fact, control the entities and benefit from the transactions;

c.   Plaintiff established, through evidence, that Defendant controlled the entities and had benefited from the transactions;

d.   Plaintiff had been prejudiced by the transfer of these funds that could otherwise have been paid to Plaintiff in partial satisfaction of the Judgment.

101.    Justice Masley held Defendant in contempt and directed that Defendant had until April 25, 2022 to purge his contempt by (1) producing all materials responsive to the Subpoena Duces Tecum; and (2) re-paying to Plaintiff the money Defendant transferred in violation of the Balkany Restraining Notice. A written order followed on April 13, 2022 (the "Contempt Order").

102.    Given the Supreme Court's findings, there is no question that the Contempt Order was issued to redress the fraudulent nature of the Transfers.

**K.**    **The Appellate Division, First Department Affirms the Contempt Order**

103.    On April 29, 2022, Defendant filed an emergency motion for Expedited Interim Relief in the Appellate Division, First Department seeking a stay of the Contempt Order ("Motion to Stay").

104.    In the Motion to Stay, Defendant raised a slew of frivolous, meritless arguments in an attempt to explain away the Transfers as well as his flagrant violations of the Restraining Notice and the Discovery Order.

105.    The First Department categorically rejected Defendant's arguments, denied the Motion to Stay, and affirmed the Contempt Order.

**L.**    **Defendant Files for Chapter 7 Relief**

106.    On May 13, 2022 (the "Petition Date"), Defendant filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code (together with Defendant's schedules of assets and liabilities and related filings, as amended, the "Petition").

107.    On the day the Petition was filed, the amount due under the Judgment, plus interest, was nearly $20 million.

108.    Under penalty of perjury, Defendant's initial schedules of assets and liabilities was filed on May 26, 2022, which suggest that Defendant owns no real property or vehicles, and that

his household goods, electronics, and cash-on-hand had a value of less than $15,000 as of the Petition Date. *Debtor's Schedules A/B* [Dkt No. 15].

109.    Defendant also identified a zero percent (0%) interest in "various limited liability companies" which he valued at $25,000. *Id.,* at p. 5.

110.    In total, Defendant's initial schedules took the position that Defendant's total assets had a value of $31,120. *Id.,* p. 10.

111.    Defendant's statement of financial affairs ("Statement of Financial Affairs"), filed on June 9, 2022, asserts that Defendant earned <u>no income</u> from January 1, 2020 through the Petition Date. *Statement of Financial Affairs* [Dkt No. 22], p. 2.

112.    Similarly, in his Statement of Financial Affairs, Defendant claimed that: (i) <u>no transfers</u> were made to, or for the benefit of, any insider within the year prior to the Petition Date, and (ii) <u>no</u> <u>transfers</u> were made to anyone, other than in the ordinary course of business, during the two years prior to the Petition Date. *Id.,* pp. 4, 8.

113.    In amendments to his Schedules A/B, filed June 9, 2022, Defendant amended his limited liability company ownership interests to disclose that he holds an interest in the following entities:

| Entity | Relationship | Percentage of Ownership | Value |
|---|---|---|---|
| PS 488 Group LLC | Member | 28% | $0.00 |
| LB 266 LLC | Member | 100% | $0.00 |
| Happy Living MB LLC | Member | 75% | $0.00 |
| HLD 122 LLC | Member | <1% | $25,000 |
| Parkview Holdings NYC LLC | Member | 10% | $0.00 |

*Amended Schedules A/B* [Dkt No. 23], *Addendum to Schedule A/B.*

114.    Pursuant to an amendment filed August 11, 2022, Defendant added even more ownership interests in limited liability companies, including the following:

| Entity | Relationship | Percentage of Ownership | Value |
|---|---|---|---|
| Eagle Development Holdings, LLC | Member | 100% | $0.00 |
| Happy Living Construction LLC | Member | 100% | $0.00 |

| Happy Living W37th LLC | Member | 100% | $0.00 |

*Amended Schedules A/B* [Dkt No. 36], *Addendum to Schedule A/B.*

115.    To date, Defendant has never amended his Statement of Financial Affairs to suggest he has realized any income since January 1, 2020 or to recognize any transfers made to insiders prior to the Petition Date.

## COUNT I:  DISCHARGE OF DEBT OWED TO PLAINTIFF
## SHOULD BE DENIED PURSUANT TO 11 U.S.C. § 523(a)(2)(A)

116.    Plaintiff incorporates herein by reference each and every allegation contained in paragraphs 1-115 as if fully set forth herein.

117.    Defendant induced, obtained, and retained $26 million dollars from Plaintiff by virtue of the Loan Agreement with Borrower.

118.    Defendant guaranteed payment of the Loan by virtue of the Guaranty.

119.    Upon information and belief, Borrower—at the sole direction of Defendant—made false and material misrepresentations in the Loan Agreement.

120.    Upon information and belief Borrower—at the sole direction of Defendant—never intended to comply with the terms of the Loan Agreement.

121.    Defendant knew that Borrower's representations in the Loan Agreement were materially false and that Borrower could not honor or comply with the Loan Agreement at the time it was executed.

122.     Upon information and belief, Defendant never intended to comply with the terms of the Guaranty and/or believed that he could not honor or comply with the Guaranty at the time it was executed.

123.    Defendant, through Borrower, retained possession, benefit, and use of the Property to Plaintiff's detriment.

124.    Defendant directed widespread non-compliance with judgment-discovery to buy time to secrete assets and artificially insulate himself from judgment enforcement.

125.    Between October 7, 2021 and December 27, 2021, Defendant orchestrated a fraudulent transfer scheme through the Transfers in a concerted effort to secrete funds and frustrate Plaintiff's ability to collect on its judgment against Defendant.

126.    The Transfers were not valid membership distributions and were not made for legitimate business purposes.

127.    Defendant thus intentionally, deliberately, wrongfully, and without just cause actively participated in a course of conduct intended to withhold funds and property rightfully belonging to Plaintiff.

128.    Additionally, Plaintiff incurred substantial attorneys' fees and costs to obtain and enforce judgments against Defendant, which are a product of Defendant's fraud and such amounts are owed by Defendant.

129.    As such, the entirety of Plaintiff's claims against Defendant are non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

### COUNT II:  DEFENDANT SHOULD BE DENIED A DISCHARGE OF ALL DEBTS PURSUANT TO 11 U.S.C. § 727(a)(2)

130.    Plaintiff incorporates herein by reference each and every allegation contained in paragraphs 1 to 129 of this Complaint as if fully set forth herein.

131.    Between October 7, 2021 and December 27, 2021, Defendant transferred, removed, and concealed his property and/or property belonging to entities he controls.

132.    By these acts Defendant intended to hinder, delay, or defraud Plaintiff.

133.    As such, Defendant's discharge should be denied pursuant to 11 U.S.C. § 727 (a)(2).

**WHEREFORE**, based upon the foregoing, Plaintiff respectfully requests that the Court enter a judgment: (i) determining that any debt owed by Defendant to Plaintiff is non-dischargeable under Section 523(a) of the Bankruptcy Code; (ii) determining that Defendant's debt is non-dischargeable in its entirety under Section 727 of the Bankruptcy Code or, in the alternative, directing the Trustee to examine the acts and conduct of Defendant to determine whether a ground exists for denial of discharge pursuant to Section 727(c)(2) of the Bankruptcy Code; (iii) granting Plaintiff's attorneys' fees and costs; and (iv) granting such other and further relief as may be just and proper.

Dated: June 21, 2023
        New York, New York

Victoria R. Serigano, Esq.
REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 251-5400
Facsimile: (212) 521-5450
Email: vserigano@reedsmith.com
*Counsel for Harlem 133 Owner, LLC*

## VERIFICATION

ANTOINETTE V. WALKER, Senior Vice President and Head of Real Estate Asset Management for and on behalf of Plaintiff 133 Harlem Owner, LLC, deposes and says: I have read the foregoing VERIFIED ADVERSARY COMPLAINT and know the contents thereof. The contents are true to my knowledge except those matters stated upon information and belief and as to those matters I believe them to be true. The grounds for my belief as to matters not stated upon my knowledge are statements or documents in my possession.

_____
Antoinette V. Walker